Dylan D. Grimes (SBN 302981)
Paige M. Tomaselli (SBN 237737)
Lauren A. Andino (SBN 344132)
**GRIME LAW LLP**
11846 Ventura Blvd., Ste 200
Studio City, CA 91604
Telephone: (310) 747-5095
dgrimes@grimelaw.com
ptomaselli@grimelaw.com
landino@grimelaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| ALICE MERTON, an individual, MERTON & GRAUWINKEL GMBH, a German corporation, PAPER PLANE PUBLISHING GMBH, a German corporation,<br><br>Plaintiffs,<br><br>v.<br><br>YE, an individual, and YEEZY RECORD LABEL, LLC, a limited liability company,<br><br>Defendants. | Case No.: 2:25-cv-02615<br><br>**JOINT 26(f) REPORT**<br><br><u>Scheduling Conference</u><br><br>Date:     August 29, 2025<br>Time:     1:30 p.m.<br>Ctrm:     6A<br><br>Action Filed: March 25, 2025 |

## SCHEDULING/DISCOVERY PLAN

Pursuant to Rule 26(f), counsel for the Parties certify that on August 4, 2025, Dylan Grimes and Lauren Andino of Grime Law, LLP (on behalf of Plaintiffs) and Christopher Rosario of Martorell Law APC (on behalf of Defendant Yeezy Record Label, LLC), conferred by telephone to discuss the nature and basis of their clients' claims and defenses, the possibilities for a prompt settlement or resolution of the case, and a proposed discovery plan. After conferring in good faith, counsel for the parties have agreed upon the following:

**(1)    Plaintiffs' Statement of the Case:** Plaintiffs are the owners of the rights to the internationally recognized song "Blindside," written and performed by professional musician and Plaintiff Alice Merton in 2022 and registered with the United States Copyright Office. Defendants willfully engaged in the infringement of copyright with the composition of "Gun to the Head," which contains an unauthorized sample of Plaintiffs' Song. Plaintiffs were damaged by that infringement based on their ownership of the composition, including 50% of the publishers' share and the writers' share of those rights. Defendant Ye, who is no stranger to copyright infringement claims, has been sued at least 14 times for the unauthorized use of samples in his work. Plaintiffs bring this action to obtain redress for the massive and continuing unauthorized commercial exploitation of the musical composition "Blindside." Plaintiffs seek injunctive relief and damages for acts of copyright infringement and unfair competition engaged in by Defendants under the laws of the United States and the State of California.

**(2)    Defendant's Statement of the Case**: Counsel is in process of investigating Plaintiff's claims, all of which are presently denied and all rights are reserved. Defendant Yeezy Record Label, LLC ("Defendant") anticipates it will be prepared to discuss its position on these matters at the FRCP 16 Scheduling Conference.  Nevertheless, Defendant's current position is as follows: Defendant contests the issues relating to the alleged creation and ownership of Plaintiff's song (hereinafter "the Work") and the

copyright of the Work, including whether it contains protectible elements, its copyrightability, and authorship. Defendant contests the alleged use of the Work, including issues of fair use, *de minimis* use, and substantial similarity. Defendant contests the Plaintiff's standing to bring claims. Defendant further contends that Plaintiff's claimed actual damages are minimal given Defendant's deductible expenses and apportionment related to the alleged infringement, including the fact that Ye is one of the most acclaimed and Grammy-nominated artists of his generation. Finally, given that the copyright of the Work came after the alleged infringement, Plaintiff cannot recover statutory damages or attorney's fees.

**(3)** **Subject Matter Jurisdiction**: the Parties agree that the U.S. Copyright Act provides the Court with subject matter jurisdiction.

**(4)** **Legal Issues**:

**Plaintiff's Position:**

The copyright to Plaintiffs' Musical Composition has been registered with the United States Copyright Office. Plaintiffs are the exclusive licensees of the copyright in the Musical Composition. Accordingly, Plaintiffs have the exclusive rights, among others, to reproduce, distribute, publicly perform, and display the Musical Composition, as well as the right to authorize others to exercise any of these rights. Defendants have knowingly infringed on Plaintiffs' copyright interest in the Musical Composition "Blindside". Defendants knowingly transferred or caused to be transferred, directly or indirectly, the sounds recorded and owned by Plaintiffs when Defendants wrongfully and without permission sampled Plaintiffs' sound recording in "Gun to My Head". Defendants knowingly produced, manufactured, distributed, and sold the sound recording of "Gun To My Head" with knowledge that the recording contained unauthorized samples of Plaintiffs' work "Blindside". Defendants' wrongful actions have caused Plaintiffs substantial damages.

Defendants have committed all of the aforesaid acts willfully, maliciously, and oppressively, without regard to Plaintiffs' legal, contractual, and exclusive proprietary rights. Therefore, Defendants' acts and practices as detailed above constitute acts of unlawful, unfair, or fraudulent business acts and practices within the meaning of California Business and Professions Code § 17200.

**Defendant's Position:**

Counsel is in process of investigating Plaintiff's claims, all of which are presently denied and all rights are reserved. Defendant anticipates it will be prepared to discuss its position on these matters at the FRCP 16 Scheduling Conference. Nevertheless, Defendant has identified the following list of legal issues:

    a. The alleged creation and ownership of the Work and the copyright of the Work, including whether it contains protectible elements, its copyrightability, and authorship.

    b. The alleged use of the Work, including issues of fair use, *de minimis* use, and substantial similarity. The only portions that can conceivably be considered close to substantially similar are lyrics of two common phrases consisting of less than 10 common words.

    c. Plaintiff's standing to bring claims based on the legal effectiveness of the registration of copyright.

    d. Plaintiff's claimed actual damages, as well as Defendant's deductible expenses and apportionment related to the alleged infringement

**(5) Parties and Evidence**: Defendant identifies itself, Ye, and the music producers and writers involved in creation of the music. For conflict purposes, Yeezy LLC is believed to be Defendant's parent. Documents and audio files relating to the creation of the Work and the allegedly infringing song, to the extent they exist. Any communications between the parties.

**(6) Damages**:

a. Plaintiffs contend they have suffered damages due to Defendants' copyright infringement and will be seeing statutory damages as provided by 17 U.S.C. Sec 504(a), as well as profits received by Defendants from the sale or other commercial exploitation of the infringing material as provided by 17 U.S.C. Sec 504(b), including all revenues received relating to or deriving from, in any manner whatsoever, the infringing material and any profits received by third parties as a result of activities for which Defendants may be found contributorily vicariously liable. Plaintiffs also seek punitive damages due to the conduct of Defendant.

b. Defendant contends it has no liability. If liability were somehow found, however, the damages would be zero. The allegedly infringing song was never commercially released on streaming platforms or on Vultures 2. Therefore, revenues for the allegedly infringing song are nearly nonexistent and easily overcome by the expenses in production, leaving no profit from which to claim actual damages. Even if certain profit were available, it would be exceedingly limited and attributable to the fame, popularity, and fanbase of one of the most successful artists of the last 25 years, Ye, and such profits would therefore be of minimal attribution to Plaintiff. Moreover, Plaintiff's claim for punitive damages is preempted by the U.S. Copyright Act, as is its Unfair Business Practices claim. Finally, Plaintiff is not entitled to statutory damages or attorneys' fees because Plaintiff registered the copyright after the alleged infringement.

**(7)** **Insurance**: Defendant is investigating whether any insurance policies may cover the claim.

**(8)** **Motions and Dispositive Motions**: Defendant has identified the following list of potential issues to be determined by motion:

- Bifurcation of liability and damages;

- Summary judgment.

Plaintiffs do not agree to bifurcate liability and damages and will oppose a motion for bifurcation. Plaintiffs will be prepared to address this at the scheduling conference.

**(9)   Manuel for Complex Litigation**: Defendant does not believe the matter requires use of the Manuel for Complex Litigation.

**(10)**   Discovery Plan:

a. Initial Disclosures: Parties agree to serve initial disclosures on each other by: August 27, 2025.

b. Discovery will be needed on various subjects, including but not limited to:

- Plaintiff: Any and all agreements between the Defendants and third parties regarding the use or sale of the copyrighted material at issue in this matter; any sales data related to the sale or exploitation of copyrighted materials; fact discovery regarding the facts and circumstances underlying the dispute; communications related to any copyright infringement, use of Plaintiffs' copyrighted materials, or request to use Plaintiffs' copyrighted materials; communications between Plaintiffs or Plaintiffs' counsel with Defendant or Defendant's predecessor regarding the facts and circumstances underlying the Complaint.
- Defendant: the allegedly protectible elements of the Work, its registration, originality, copyrightability, standing, and authorship. Plaintiff's contentions with regard to Defendant's alleged use of the Work including issues of fair use, de minimis use, substantial similarity, apportionment.

Defendant's deductible expenses and apportionment related to the alleged infringement.

**(a)  Disclosure, discovery, or preservation of electronically stored information should be handled as follows:**

The Parties agree that they will preserve evidence relating to the facts and circumstances underlying the Complaint from 2022 forward to the present.

The Parties agreed to provide all documents electronically via PDF unless otherwise impossible. The Parties will each bear their own cost of production. The Parties agree that privileged documents and data will be logged in a privilege log, and that inadvertently produced privileged information will be subject to a claw-back agreement. If any Party receives privileged information, they will immediately notify the producing Party and destroy the document.

**(b)  The parties have discussed any issues regarding preservation of discoverable information as follows:**

Please see (a) above.

**(c)  The parties have discussed possible need for a protective order as follows:**

The Parties agree to be bound by a stipulated Protective Order that provides for, among other things, the designation of information as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, which will be submitted to the Court for approval forthwith.

**(d)  If this is a case that will involve the discovery of medical, mental health, employment, education, tax, or workers compensation records, the parties have agreed to the following with respect to who will secure these records and how the discovery of the records will be handled (it will not be a sufficient answer that the parties have not addressed the issue or it will be considered later):**

The Parties will follow the Protective Order when it comes to sensitive, confidential, or trade-secret information.

**(e)  The parties have discussed privilege logs, including information to be included about documents over which privilege is asserted and any categories of documents which the parties agree need not be identified in privilege logs:**

Privilege Logs will include: the document date, the recipient and the author, the general subject matter of the communication/ document, and the privileged asserted. The following information need not be included in a privilege log: (1) communications made in during and in furtherance of this litigation when made exclusively between a party in this action and their counsel of record (including non-attorney staff), (2) documents and drafts made by counsel of record (including non-attorney staff) during and in furtherance of this litigation.

**(f)   Written Discovery**

The parties propose following the standard limitations of the Federal Rules of Civil Procedure.

**(g)** The parties have discussed possible need for depositions of organizations pursuant to Rule 30(b)(6) and, as required by that rule, will confer in advance of any depositions of organizations about topics on which testimony is requested.

**(h)** The parties have agreed to enter into a stipulation allowing the depositions of parties to be taken remotely via video conferencing.

**(i)** The parties have agreed that all fact discovery will be completed by the following deadline, with all discovery pursuant to Rules 33, 34, and 36 to be served a minimum of thirty-three (33) days prior to the deadline: September 25, 2026

**(j)** The parties have agreed on the following deadline for discovery motions: October 26, 2026

**(k)** An appropriate time for a mid-discovery status conference would be: March 6, 2026

**(l)** The parties have agreed on the following deadlines for exchanging complete expert witness reports: October 2, 2026 for plaintiff(s); October 2, 2026 for defendant; and October 16, 2026 for any rebuttal experts.

**(m)** The parties have agreed on the following deadline to complete discovery depositions of expert witnesses: October 30, 2026.

**(10) The parties have agreed to the following deadlines for filing motions:**

November 28, 2025: motions to join additional parties;

November 28, 2025: motions to amend pleadings;

November 27, 2026: nondispositive motions (e.g. consolidation, bifurcation); and,

November 27, 2026 dispositive motions (e.g. summary judgment).

**(11) The parties have discussed alternative dispute resolution and plan as follows:** Parties are open to mediation. Defendant proposes referral to the Court Mediation Panel.

**(12)** Both parties request trial by jury.

**(13)** The estimated length of trial is:

Plaintiff: five to seven days.

Defendant: 7 days. Defendant will likely call approximately 7 witnesses to address issues of creation of the allegedly infringing song, financial information, musicological opinion, and valuation in addition to cross-examaintion as to Plaintiff's creation, registration, authorship, registration, originality, copyrightability, and standing.

JOINT 26(f) REPORT
9

**(14)** Trial Counsel for defendant will be Eduardo Martorell and Christopher Rosario.

**(15)** No independent master is required.

August 15, 2025                    Respectfully submitted,

/s/ Lauren A. Andino
Dylan D. Grimes
Paige M. Tomaselli
Lauren A. Andino
*Attorneys for Plaintiffs*
ALICE MERTON, MERTON & GRAUWINKEL GMBH, PAPER PLANE PUBLISHING GMBH

/s/ *Eduardo Martorell*
MARTORELL LAW APC
Eduardo Martorell
Christopher A. Rosario
P.O. Box 5475
Sonora, CA 95370
*Attorneys for Defendant YEEZY RECORD LABEL, LLC*

**ECF CERTIFICATION**

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that Eduardo Martorell, on whose behalf this filing is jointly submitted, has concurred in this filing's content and has authorized me to file this document.

/s/ Lauren A. Andino
Lauren Andino