Dylan D. Grimes (SBN 302981)
Lauren A. Andino (SBN 344132)
**GRIME LAW LLP**
11846 Ventura Blvd., Ste 200
Studio City, CA 91604
Telephone: (310) 747-5095
dgrimes@grimelaw.com
landino@grimelaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| ALICE MERTON, an individual, MERTON & GRAUWINKEL GMBH, a German corporation, PAPER PLANE PUBLISHING GMBH, a German corporation,<br><br>Plaintiffs,<br><br>v.<br><br>YE, an individual, and YEEZY RECORD LABEL, LLC, a limited liability company,<br><br>Defendants. | Case No.: 2:25-cv-02615<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**NATURE OF THE ACTION**

1.  Plaintiffs ALICE MERTON, an individual, MERTON & GRAUWINKEL GMBH, a German corporation, PAPER PLANE PUBLISHING GMBH, a German corporation (collectively, Plaintiffs) bring this action against Defendants YE (YE) and YEEZY RECORD LABEL, LLC to obtain redress for the massive and continuing unauthorized commercial exploitation of the musical composition "Blindside."

FIRST AMENDED COMPLAINT – 1

2.	For decades, well-known artists have exploited hard-working artists' creativity. Digital technology has fueled widespread copyright infringement, making it easier to commit and resulting in significant financial damages for artists, producers, and studios.

3.	YE is no stranger to copyright infringement claims. Specifically, since 2008, YE has been sued at least fourteen (14) times for his unauthorized use of samples in his work.

4.	Plaintiffs are the owners of the rights to the internationally recognized song "Blindside," written and performed by professional musician and Plaintiff Alice Merton in 2022 and registered with the United States Copyright Office. Defendants willfully engaged in the infringement of copyright with the composition of "Gun to the Head," which contains an unauthorized sample of Plaintiffs' Song. Plaintiffs were damaged by that infringement based on their ownership of the composition.

*Deleted: , including 50% of the publishers' share and the writers' share of those rights*

5.	Plaintiffs seek injunctive relief and damages for acts of copyright infringement engaged in by Defendants under the laws of the United States and the State of California.

*Deleted: and unfair competition*

## THE PARTIES

6.	Plaintiff Alice Merton is an individual residing in the United Kingdom, and doing business internationally, including in the United States, through her career as a professional musician.

7.	Plaintiff, Merton & Grauwinkel GmbH, is a corporation, duly organized and existing under the laws of Germany, with its principal place of business located in Germany.

8.	Plaintiff, Paper Plane Publishing GmbH, is a corporation, duly organized and existing under the laws of Germany, with its principal place of business located in Germany.

FIRST AMENDED COMPLAINT – 2

9. Defendant YE, formerly Kanye Omari West, is, upon information and belief, a citizen and resident of the State of California.

10. Defendant Yeezy Record Label LLC is, upon information and belief, a limited liability company duly organized and existing under the laws of California, with its principal place of business located in California.

11. The true names and capacities of the Defendants DOES 1-100, inclusive, are unknown to Plaintiffs, who therefore sue such defendants by their fictitious names. Plaintiffs are not yet able to ascertain whether there are other persons responsible for claims made herein. Plaintiffs will amend this Complaint to show their true names and capacities when the same have been ascertained.

## JURISDICTION AND VENUE

12. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq*.

13. This Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331 and 1338, which provides federal district courts shall have original jurisdiction of any civil action arising under an Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts and of the states in patent, plant variety protection and copyright cases.

14. This Court has personal jurisdiction over Defendants because each has purposefully committed acts within the State of California that caused injury within the state. Furthermore, Defendants have purposefully availed themselves of the benefits of conducting business within the State of California by directing their activities with respect to the infringements complained of herein, including their marketing and promotion of the infringing work to California residents, who are able to purchase, download, and stream the infringing compositions and recordings.

15. This Court also has general personal jurisdiction over YE because, upon information and belief, YE resides in Los Angeles, California.

16. This Court has general personal jurisdiction over Yeezy because, upon information and belief, Yeezy has its principal place of business in California, and it does business throughout the state of California.

17. Venue is proper in this District pursuant to 28 U.S.C. Sections 1391 and 1400(a).

**FACTS**

I. **Alice Merton**

18. Alice Florence Clarissa Merton (Merton) was born on September 13, 1993 in Frankfurt, Germany.

19. Merton is a direct descendent of holocaust survivors.

20. In 2014, Merton signed her first publishing contract with BMG Rights Management as a songwriter.

21. After moving to Berlin, Merton and her manager Paul Grauwinkel founded the label Paper Plane Records International and signed a partnership deal with the renowned American independent record label, Mom + Pop Music.

22. In 2016, Merton released the song "No Roots". The song reached number one on both Hype Machine and Spotify's Global Viral 50 charts, and was soon included on the "Hit Play" lists of several radio stations. The song was also featured on the Netflix show, *The Blacklist*.

23. In 2018, Merton won the European Border Breakers Award.

24. On February 9, 2018, Merton performed on "No Roots" on *The Tonight Show*, which Jimmy Fallon called "the catchiest song of the year, by far."

25. Between 2017 and 2019, Merton performed at several major US festivals, including Coachella, Firefly Festival, and Austin City Limits. She also headlined multiple tours in the USA, Canada and Europe.

26. The song "No Roots" was honored with the Gold Award in the USA. She has now received a total of 9 platinum awards for her music. Merton also won the biggest German music award ECHO, as well as two awards Preis für Popkultur.

27. On May 9, 2019 Merton performed "No Roots" live on *The Late Show With James Corden.*

28. In 2019, Merton was a coach on the ninth series of *The Voice* of Germany, and became the first female coach to win a series with Claudia Emmanuela Santoso.

29. On October 18, 2019, Merton re-released her album *Mint* with four additional songs ("Back To Berlin", "PCH", "Easy", and "Keeps Me Awake"). Later, in the beginning of 2020, she toured across Europe.

30. Merton performed her song "Vertigo" on the ABC TV show *Jimmy Kimmel Live* on October 4, 2021.

31. On September 9, 2021, she released additional singles "Hero" and "Island". Later in April 2022, she released her next single "Blindside", and lastly "Loveback" in May 2022.

32. Merton's second studio album, *S.I.D.E.S.*, was released on June 17, 2022.

## II. Defendant YE's History of Copyright Infringement Claims

33. In May of 2008, Kathleen Firrantello the daughter of jazz musician Joe Farrell—an acclaimed saxophonist and flutist who played with Aretha Franklin, Santana, Hall & Oates and James Brown—claimed in her lawsuit that Kanye's 2005 song "Gone," from his second studio album Late Registration, had sampled material from Farrell's 1974 song "Upon This Rock."[1]

34. In October of 2011, Blues musician Syl Johnson sued Kanye and Jay-Z over claims that they had used a sample from his "Different Strokes" on their song "The Joy," from their joint album Watch the Throne. Johnson claimed he had explicitly refused to

---

[1] *Firrantello v. YE*, No. 1:08-cv-04785 (S.D.N.Y. filed May 22, 2008).

FIRST AMENDED COMPLAINT – 5

clear the same sample when Kanye tried to release the same song on his own earlier album: "Defendants' infringing acts were and continue to be committed willfully."[2]

35. In April of 2013, the family of a deceased musical artist named David Pryor sued YE over "Gold Digger," a smash hit that spent 10 weeks atop the Hot 100 in 2005. The case claimed that Kanye had illegally sampled from "Bumpin' Bus Stop," a 1974 song released by Pryor's group Thunder And Lightning. Pryor's family called YE's use of the clip an "unabashed theft of plaintiffs' intellectual property."[3]

36. In May of 2016, Gabor Presser, a former member of a Hungarian rock band called Omega, accused YE in his lawsuit of sampling a 1969 song "Gyongyhaju Lany" in his 2013 track "New Slaves." Kanye's lawyers later admitted to the unauthorized use, chalking it up to the final clearance paperwork "falling between the cracks."[4]

37. In March of 2019, an actor named Ronald Bobb-Semple claimed that "Freeee (Ghost Town Pt. 2)," a track released by YE, Kid Cudi, and Ty Dolla $ign, included a sample from his one-man show about the life of historical figure Marcus Garvey. "While Defendants and others have received many accolades and substantial profits from Free, Bobb-Semple has received nothing: no acknowledgement, no credit, no remuneration of any kind."[5]

38. In August of 2019, a company that owns the rights to George Jackson's "I Can't Do Without You" alleged in their lawsuit that YE and Pusha T's 2018 collab "Come Back Baby" heavily sampled the earlier song without permission – so much so that more

---

[2] Chris Morris, *Suit vs. Kanye West, Jay-Z dismissed Settlement pending in Syl Johnson copyright case* (Mar. 12, 2012), https://variety.com/2012/music/news/suit-vs-kanye-YE-jay-z-dismissed-1118051347/.

[3] *Steward v. West*, No. CV 13-02449-BRO (C.D. Cal. filed Apr. 5, 2013).

[4] *Presser et al v YE et al.*, No. 16-03798 (S.D. N.Y. filed May 20, 2016).

[5] *Ronald Oslin Bobb Semple v. Kanye YE*, No. 2:19-cv-01682, (C.D. Cal. filed Mar. 7, 2019)

FIRST AMENDED COMPLAINT – 6

than 35 percent of the new song was comprised of unlicensed material. The suit also claimed that YE's track was about "the money made from selling drugs," and said the sample would not have been approved for a song with such a message "under any circumstances."[6]

39.   In May of 2022 a Texas pastor named Bishop David P. Moten claimed that YE had used unauthorized samples of a recorded sermon in the song "Come to Life," a track from the album "Donda." The suit, which claimed that 20 percent of the new song was made up of the unlicensed clip, called out the star's previous sampling lawsuits, calling it "an alarming pattern and practice of willfully and egregiously sampling sound recordings of others without consent or permission."[7]

40.   In June of 2022, music publisher Ultra International hit YE with a lawsuit over allegations that he had used a sample of Marshall Jefferson's 1986 house track "Move Your Body" on the Donda 2 song "Flowers". The case, which claimed that the unlicensed clip was "repeated at least 22 times throughout" Ye's song, blasted the rapper for what Ultra called his "hypocrisy" in dealing with samples: "YE advocates for artists' rights with one hand, yet has no shame in taking away rights from another artist with the other."[8]

41.   In November of 2022, a company that owns the rights to the music of Boogie Down Productions claimed in its lawsuit that YE had used the pioneering rap group's 1986 song "South Bronx" – a "seminal track in the American hip-hop lexicography" – in his "Life of the Party" without permission. The company claimed that YE's people

---

[6] Bill Donahue, *How Many Times Has Ye Been Sued Over Sampling? Here's Every Lawsuit* (Aug. 8, 2024), https://www.billboard.com/lists/kanye-west-ye-sampling-lawsuits-full-list/syl-johnson-v-kanye-west/.

[7] *Moten v. Def Jam*, No. 3:22-cv-00991 (N.D. Tex. Filed May 3, 2022).

[8] *Ultra Int'l Music Publ'g v. YE*, 22 Civ. 5560 (S.D.N.Y. filed June 29, 2022).

reached out to clear the use of the Boogie Down song, but that the star had released his track even though a deal was never struck.[9]

42. Also in November of 2022, Trax, which owns the masters to Marshall Jefferson's "Move Your Body," filed a case that echoed the claims made by Ultra — that YE had used the song in his "Flowers." Trax called it a "blatant exploitation" and an "unambiguous infringement" of the company's rights to the sound recording of Jefferson's song.[10]

43. In February of 2024, the estate of Donna Summer accused Ye of "shamelessly" interpolating the disco legend's 1977 hit "I Feel Love" in his "Good (Don't Die)," which he had released on his chart-topping Vultures 1 album. The estate claimed that it had expressly rejected his request to use her song because it wanted "no association" with the controversial rapper: "This lawsuit is about … the rights of artists to decide how their works are used and presented to the public, and the need to prevent anyone from simply stealing creative works when they cannot secure the right to use them legally."[11]

44. Most recently, in July of 2024, a company that owns the rights to an instrumental track called "MSD PT2" alleged in its lawsuit that YE had sampled the song for his "Hurricane" and "Moon" — both of which reached the top 20 on the Hot 100 when they were released in 2021 on his album Donda. In an act of particularly "blatant brazenness," the lawsuit claimed that YE even credited the song's four creators despite their refusal to license their work to him.[12]

---

[9] *Phase One Network, Inc. v. Ye*, No. 22-CV-9511, WL 964613 (S.D.N.Y. Mar. 5, 2024)

[10] *Trax Records, LTD v. Ye,* No. CV 22-4641, WL 216931 (E.D. La. Jan. 19, 2024).

[11] *Bruce Sudano v. Kanye Omari YE et al*., No. 24-01586 (C.D. Cal. filed Feb. 27, 2024).

[12] *Artist Revenue Advocates LLC v. YE,* No. 2:24-cv-06018 (C.D. Cal. filed Jul. 17, 2024).

### III. Defendants' Infringement of "Blindside"

45. In 2022, Plaintiff Merton wrote a musical composition entitled, "Blindside" (the "Plaintiffs' Song"). Plaintiffs' Song was originally recorded by Merton and the sound recording was released by Merton & Grauwinkel GmbH (d/b/a Paper Plane Records International) on April 7, 2022, catalog number PPR22-027, ISRC DEVQ72200006 (the "Plaintiffs' Record").

46. The music, lyrics, and/or other creative elements of Plaintiffs' Song are wholly original with Plaintiffs and constitute copyrightable subject matter under the Copyright Act.

47. Plaintiffs' Song is the subject of an existing copyright registration, Registration No. PA0002489603, a copy of the certificate of which is attached hereto and identified as Exhibit A and is incorporated herein by reference (the "Registered Work"). The Registered Work has been duly registered in the Copyright Office and all applicable recordation and registration formalities and notice requirements under the Copyright Act have been fully complied with.

48. On July 28, 2022, Plaintiffs' Song was registered with Broadcast Music, Inc. ("BMI"), the music writer and publisher performing rights society. At all times complained of herein, information regarding the registration of Plaintiffs' Song and the publishers or other parties responsible for the licensing of Plaintiffs' Song was available from BMI.

49. BMG Rights Management (US) LLC ("BMG") owns, administers, and controls an interest in and to the composition of Plaintiffs' Song.

50. On February 15, 2024, Defendants, through Alien Music Services, requested approval from BMG, for use Plaintiffs' Song, to be incorporated as a sample in Defendant YE's song, "Gun To My Head".

51. On March 4, 2024, BMG forwarded Defendants' request to Plaintiffs via email.

FIRST AMENDED COMPLAINT – 9

**Deleted:** <#>On December 12, 2023, Defendant YE held an event in Miami, Florida, where he performed and played music from his album *Vultures* and presented it to the public before the official release. "Gun To My Head" was played at this event. The song was recorded with the American rapper Kid Cudi, with whom YE has already released several commercially successful songs. The presentation of "Gun To My Head" received a lot of attention. It was YE and Kid Cudi's first track after a long break. After the presentation of "Gun To My Head" the public became aware that it contained an unauthorized sample of Plaintiffs' Song¶

52. In an email dated March 7, 2024, Plaintiffs replied to BMG, denying Defendant's request for use of Plaintiffs' Song. At this time no reason for rejecting the request was given.

53. However, on March 7, 2024, Plaintiffs received another email from BMG. This email requested a reason from Plaintiffs as to why they would deny Defendant YE the opportunity to use Plaintiffs' Song. Specifically, they asked Plaintiffs to "give a reason why the request was rejected".

54. The same day, March 7, 2024, Plaintiffs provided their response, informing BMG that the request was being rejected. The specific reason Plaintiffs gave was that "the artist's values are contrary to our values."

55. At the time of rejection, Plaintiffs were aware of Defendant's identity and reputation in the music industry and politically. Although Defendants' use of Plaintiffs' Song could potentially bring in significant revenue, Plaintiff Alice Merton was unwilling to compromise her personal beliefs and wanted not to be associated with YE in any manner.

56. Of significant concern to Plaintiff Merton, were Defendant YE's antisemitic, racist remarks which were made publicly and continue to be made publicly as recently as February 10, 2024. Merton is a German resident who has close ties to the holocaust through Jewish family members who survived its horrors, and as such feels closely connected to it.

57. Plaintiffs were understandably shocked and humiliated when on August 8, 2024, Defendant YE's album *Vultures* was officially released and "Gun To My Head" was included on a special "deluxe" version of the album which was published for sale on Defendant YE's website. Various websites online were reporting that Plaintiffs' Song was being used in "Gun To My Head". Merton's name was suddenly appearing everywhere, with claims that the song was a collaboration between YE, Kid Cudi, and Merton.

FIRST AMENDED COMPLAINT – 10

58. "Gun To My Head" was also published on Youtube on August 8, 2024, and remains available for fans to access.

59. To make matters worse, when Defendant YE's album *Vultures* was officially released on August 8, 2024, fans were outraged when they discovered it was not included in the non-deluxe version of the album. The fans blamed Merton for not authorizing the use of Plaintiffs' Song, and began contacting her directly. YE's fans were relentless, making threats to Merton should she not clear the sample.

60. Following these threats, Merton feared returning to America for further tour dates. She also stopped performing Plaintiffs' Song at concerts for fear of confrontation or potential violence against her.

61. Defendants' use of Plaintiffs' Song is significant. Defendant YE's song, "Gun To My Head" replayed a melody phrase from Plaintiff's Song that spans most of the entire song's baseline melody. It also features vocal recordings of the opening lyric line from Plaintiff's Song, "I sat down with a gun to my head," which is the dominant lyric line in "Gun To My Head".

62. Plaintiffs immediately notified BMG of the unauthorized use of Plaintiffs' Song.

63. On August 20, 2024 BMG sent Defendants a formal letter, demanding that Defendants immediately cease, desist, and refrain from any further violation of Plaintiffs' rights. This letter further demanded that Defendants confirm in writing his compliance and that Defendants provide full accounting of any and all uses of the Plaintiffs' Song. Defendants did not respond to the letter from BMG.

64. In addition to the negative association with Defendant YE that Plaintiffs were attempting to avoid, Plaintiff Merton began receiving death threats and abuse from Defendants' fan base online because she would not clear the sample. Defendant did nothing to stop the abuse, allowing his fans to intimidate and harass Plaintiff Merton and

failing to acknowledge that Plaintiffs had rejected Defendant's request to use Plaintiffs' Song.

## FIRST CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT

65. Plaintiffs incorporate by this reference each and every allegation contained in paragraphs 1 through 64, inclusive.

66. The copyright to Plaintiffs' Musical Composition has been registered with the United States Copyright Office, see Exhibit A.

67. Plaintiffs are the exclusive licensees of the copyright in the Musical Composition. Accordingly, Plaintiffs have the exclusive rights, among others, to reproduce, distribute, publicly perform, and display the Musical Composition, as well as the right to authorize others to exercise any of these rights.

68. Defendants have knowingly infringed on Plaintiffs' copyright interest in the Musical Composition "Blindside".

69. Defendants knowingly transferred or caused to be transferred, directly or indirectly, the sounds recorded and owned by Plaintiffs when Defendants wrongfully and without permission sampled Plaintiffs' sound recording in "Gun to My Head".

70. Defendants knowingly produced, manufactured, distributed, and sold the sound recording of "Gun To My Head" with knowledge that the recording contained unauthorized samples of Plaintiffs' work "Blindside".

71. Defendants' wrongful actions have caused Plaintiffs substantial damages.

72. The conduct of Defendants was wanton, reckless, and/or malicious to Plaintiffs as to allow the imposition of punitive damages under applicable law.

73. Based on the foregoing, Plaintiffs demand judgment against Defendants for disgorgement of profits, compensatory, consequential, incidental, and punitive damages in an amount to be determined by the trier of fact in this case, plus statutory fines, costs,

interest and expenses, profits and monies derived from the sale of albums containing the sound recording "Gun To My Head".

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants, as follows:

1.  Permanently enjoining and restraining Defendants, their respective officers, agents, servants, employees and attorneys, and predecessors and successors, by whatever name, and all those in active concert or participation with them from:

(a) Further violating any of the exclusive rights of Plaintiffs in the Plaintiffs' Song, "Blindside," including the importation, reproduction, preparation, sale or distribution of any and all copies of the Infringing YE Record;

(b) Further infringing upon Plaintiffs' rights under the Copyright Act by importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying, or otherwise disposing of any products not authorized by Plaintiffs, incorporating any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Song or its creative elements;

(c) Licensing or otherwise authorizing the public performance of any recording of the Infringing YE Record in all media, including, but not limited to, radio, television (broadcast and cable), the Internet and motion pictures, and publicly performing the musical compositions embodied in Infringing YE Record;

(d) Using any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Song in such fashion as to relate or connect, or tend to relate or connect such copies in any way to Plaintiffs;

(e) Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the industry or public, or individual members thereof, to believe that any products or services manufactured, distributed or sold by Defendants is in any

FIRST AMENDED COMPLAINT – 13

1 manner associated or connected with Plaintiffs or are sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

(f) Engaging in any other activity constituting unfair competition with Plaintiffs or its licensees, or constituting an infringement of any of Plaintiffs' copyrights or of Plaintiffs' rights in, or rights to use or to exploit, said copyrights, including aiding and abetting third parties engaging in such activities;

(g) Engaging in any acts or activities directly or indirectly calculated to trade upon or injure the reputation or the goodwill of Plaintiffs or in any manner to compete unfairly with Plaintiffs by appropriating the distinctive creative elements of Plaintiffs' copyrighted works;

(h) Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs 1(a) through (g) hereinabove; and

(i) Secreting, destroying, altering, removing or otherwise dealing with copies of Infringing YE Record, or any books or records which contain any information relating to the importation, manufacture, production, distribution, circulation, sale, marketing, offering for sale, advertising, promoting or displaying of any copies of Infringing YE Record.

2. Directing that Defendants deliver for impoundment:

(a) All copies of the Infringing YE Record, including sound recordings in any format, CDs, DVDs, videocassettes, sheet music, labels, boxes, signs, packages, advertisements, novelty items, prints, and any other such goods or merchandise in Defendants' possession, custody, or control incorporating or associated with Infringing YE Record; and

FIRST AMENDED COMPLAINT – 14

      (b)    All masters, plates, molds, mechanicals or apparatus utilized in making copies of Infringing YE Record and packaging therefor, and all digital files of same in whatever media they are maintained.

3.    Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products or services manufactured, sold or otherwise circulated or promoted by Defendants are authorized by Plaintiffs or related in any way to Plaintiffs or their musical compositions or sound recordings.

4.    Directing that an accounting of and judgment be rendered against Defendants for:

    (a)    Statutory damages as provided by 17 U.S.C. Sec 504(a);

    (b)    All profits received by Defendants from the sale or other commercial exploitation of the Infringing YE Record, as provided by 17 U.S.C. Sec. 504(b), including all revenues received relating to or deriving from, in any manner whatsoever, Infringing YE Record, and any profits received by third parties as a result of activities for which Defendants may be found contributorily vicariously liable;

    (c)    All damages suffered by Plaintiffs as a result of any of Defendants' copyright infringements, as provided by 17 U.S.C. Sec 504(a), whether as a result of their direct, contributory, or vicarious actions;

    (d)    All monies receive from whatever source, directly or indirectly, by Defendants as unjust enrichment from the exploitation of Infringing YE Record.

5.    Awarding Plaintiffs punitive damages of not less than $1,000,000.

6.    Awarding Plaintiffs their costs in this action, including reasonable attorneys' and investigative fees, as provided by 17 U.S.C. Sec 505.

7.    Directing that the Court retains jurisdiction of this action for the purpose of enabling Plaintiffs to apply to the Court at any time for such further orders and directions

FIRST AMENDED COMPLAINT – 15

as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement of or compliance therewith, and for the punishment of any violations thereof.

8. Awarding to Plaintiffs such other and further relief as the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demands a trial by jury on all issues so triable.

Dated: November 6, 2025              GRIME LAW, LLP


                                     By: _____
                                     Dylan D. Grimes
                                     Lauren Andino
                                     _____
                                     Attorneys for Plaintiff

FIRST AMENDED COMPLAINT – 16