**MARTORELL LAW APC**
Eduardo Martorell, State Bar No. 240027
EMartorell@Martorell-Law.com
Christopher Rosario, State Bar No. 326436
CRosario@Martorell-Law.com
Evan Miller, State Bar No. 336473
EMiller@Martorell-Law.com
222 N. Pacific Coast Highway, Suite 1300
El Segundo, CA 90245
Telephone: (323) 840-1200
Facsimile: (323) 840-1300

*Attorneys for Defendants*
*Ye and Yeezy Record Label, LLC*

MARTORELL LAW APC
Litigation & Trial Counsel

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ALICE MERTON, an individual, MERTON & GRAUWINKEL GMBH, a German corporation, PAPER PLANE PUBLISHING GMBH, a German corporation,

Plaintiffs,

v.

YE, an individual, and YEEZY RECORD LABEL, LLC, a limited liability company,

Defendants.

Case No.: 2:25-cv-02615-FLA-KS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

Hearing Date: November 20, 2026
Time: 1:30 p.m.
Courtroom: 6B

Judge: Hon. Fernando L. Aenlle-Rocha
Trial: March 15, 2027

MARTORELL LAW APC
Litigation & Trial Counsel

# TABLE OF CONTENTS

I. INTRODUCTION .......... 5
II. RELEVANT FACTS .......... 7
A. The Composition, Registration, and Accused Release .......... 7
B. Distribution and Sales of the Relevant Edition .......... 8
C. Discovery Concerning Ownership, Comparison Evidence, and Damages .......... 8
III. LEGAL STANDARD .......... 10
A. Summary Judgment Requires an Element-Specific Showing That No Genuine Dispute of Material Fact Requires Trial. .......... 10
B. Rule 56 Permits Partial Judgment and Requires Attention to Admissibility, Foundation, and the Precise Relief Supported by the Record. .......... 11
C. Copyright Infringement Requires Ownership and Copying of Original Constituent Elements. .......... 11
IV. ARGUMENT .......... 12
A. Defendants Are Entitled to Summary Judgment Against Merton & Grauwinkel Because It Has Not Established Ownership of an Exclusive Right in the Composition. .......... 12
B. Defendants Are Entitled to Summary Judgment Because Plaintiffs Cannot Establish Substantial Similarity of Protected Compositional Expression. .......... 13
1. The Extrinsic Test Requires an Objective Comparison of Protected Compositional Expression Before the Claim May Proceed to Trial. .......... 13
2. Plaintiffs Supplied No Disclosed Expert Analysis or Substantive Discovery Comparison Supporting the Alleged Protected Similarities. .......... 14
3. Plaintiffs Disclosed No Expert Analysis Supporting Their Compositional Theory. .......... 15
C. Defendants Are Entitled to Partial Summary Judgment on Liability Based on the Alleged Third-Party Publication. .......... 15

1. Collective Allegations Do Not Establish Each Defendant's Responsibility for Each Act. .......... 16
2. Unauthorized Third-Party Uploads Do Not Establish Contributory or Vicarious Liability Without the Required Additional Proof. .......... 16

D. Section 412 Bars Statutory Damages and Plaintiffs' Copyright Attorney's Fees. .......... 17

E. Defendants Are Entitled to Partial Summary Judgment on Plaintiffs' Unsupported Actual Damages Claims. .......... 18
1. None of the Plaintiffs Supplied the Requested Amount or Method for Its Actual Damages Claim. .......... 18
2. Plaintiffs Have No Objective Evidence Supporting a Hypothetical License Fee. .......... 19
3. Plaintiffs Have Not Established a Lost License, Performance, or Other Economic Opportunity Caused by the Alleged Infringement. .......... 20
4. Personal Distress and Subjective Objection to Association Are Not Copyright Market Damages. .......... 21

F. The Court Should Limit the Profits Inquiry to Supported Revenues Connected to the Alleged Infringement. .......... 21
1. Unrelated Album, Concert, Merchandise, and Platform Receipts Are Not Recoverable Without a Causal Connection to the Alleged Infringement. .......... 21
2. The Relevant Direct-Sales Revenue is $70,028.55 from the Edition Containing the Song. .......... 22

G. The Copyright Claim Does Not Permit Punitive Damages, Private Fines, Duplicate Recovery, or Unauthorized Litigation Expenses .......... 23
1. The Copyright Claim Does Not Support Plaintiffs' Additional Punitive-Damages or Private-Fine Demands .......... 23

MARTORELL LAW APC
Litigation & Trial Counsel

2. Catchall Labels Do Not Authorize Duplicate Recovery or Unrestricted Investigative Expenses ........ 24
V. CONCLUSION ........ 24

MARTORELL LAW APC
Litigation & Trial Counsel

MARTORELL LAW APC
Litigation & Trial Counsel

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Ye and Yeezy Record Label, LLC ("YRL") (collectively, "Defendants") respectfully submit this Memorandum of Points and Authorities in support of their Motion or Summary Judgment or, Alternatively, Partial Summary Judgment on the copyright infringement claim asserted by Plaintiffs Alice Merton ("Merton"), Merton & Grauwinkel GmbH ("Merton & Grauwinkel"), and Paper Plane Publishing GmbH ("Paper Plane") (collectively, "Plaintiffs") in the First Amended Complaint ("FAC").

## I. INTRODUCTION

This action concerns a single claim for infringement of the "Blindside" musical composition through its alleged use in "Gun To My Head." Plaintiffs do not assert a sound recording claim.

Although Plaintiffs allege infringement and substantial monetary injury, they failed to provide the evidence necessary to substantiate their claims. In response to Defendants' interrogatories and requests for production, Plaintiffs repeatedly objected that the requests were premature and deferred substantive responses until an unspecified later stage of discovery. That stage never came. Plaintiffs produced no responsive documents and served no substantive supplemental answers. They disclosed no experts. All five noticed depositions resulted in certified records of nonappearance. With discovery closed and the applicable deadlines expired, Plaintiffs cannot substitute allegations and promises of future evidence for the proof required to establish their claim. Thus, there is no dispute of material fact and Defendants are entitled to judgment as a matter of law.

Most significantly, Plaintiffs have supplied no substantive comparison establishing actionable similarity of protected compositional expression. Their discovery responses failed to identify the particular protected expression allegedly copied, its comparative significance, or the versions being compared. They produced none of the requested comparison recordings, scores, compositional materials, or

MARTORELL LAW APC
Litigation & Trial Counsel

completed musicological analyses. Nor did they disclose any expert to provide the objective comparison required by the extrinsic test. Without competent evidence sufficient to satisfy that test, Plaintiffs cannot establish infringement merely by alleging musical resemblance. Defendants are therefore entitled to summary judgment on the composition claim.

Merton & Grauwinkel GmbH has a separate and fundamental evidentiary deficiency. It is not identified as an author or claimant on the composition's registration certificate. Defendants specifically requested evidence identifying its alleged composition rights, the transactions establishing those rights, and the supporting instruments. Merton & Grauwinkel identified none. Its alleged involvement in releasing the "Blindside" sound recording does not establish ownership of the composition. Its failure to establish an infringed exclusive composition right independently warrants summary judgment against that Plaintiff.

Plaintiffs also seek to attribute a separate YouTube publication to Defendants without identifying evidence connecting either Defendant to that activity. The authorized commercial release consisted of "Gun To My Head" appearing on one deluxe edition of the *Vultures 2* album, offered through Yeezy.com only for a two-day period, August 8-9, 2024. Neither Defendant authorized distribution through other streaming or digital music platforms. Plaintiffs supplied no substantive evidence identifying either Defendant's participation in the alleged YouTube publication or establishing authorization, intentional assistance, supervisory control, or financial benefit sufficient to impose secondary liability. Defendants are entitled to partial summary judgment on that alleged publication.

Even if liability remains disputed, Plaintiffs cannot recover statutory damages or copyright attorney's fees. The composition was first published on June 17, 2022, but was not registered until August 19, 2024. The alleged infringement commenced before registration, which occurred more than two years after first publication and well outside the three-month grace period. Section 412 therefore bars those remedies.

MARTORELL LAW APC
Litigation & Trial Counsel

Plaintiffs' actual damages demands suffer from equally substantial evidentiary deficiencies. No Plaintiff supplied an amount or calculation method. None produced objective evidence supporting a hypothetical license fee, lost licensing transaction, canceled performance, or other economic loss attributable to the alleged infringement. Personal distress and objections to association with Ye do not establish copyright market injury. The copyright claim likewise provides no basis for the additional punitive damages, private fines, duplicate recovery, or unrestricted litigation expenses Plaintiffs demand.

Finally, the relevant direct sales evidence establishes $70,028.55 in revenue after returns from the seventeen-track deluxe edition containing "Gun To My Head." That amount represents revenue from the entire edition, including sixteen <u>other</u> tracks. The other deluxe editions did not contain the song, and no additional sales of the relevant edition occurred. Plaintiffs have identified no factual basis connecting the alleged infringement to unrelated album, concert, merchandise, or platform revenues. The Court should exclude those unsupported revenue categories and limit the relevant direct sales revenue base to $70,028.55, without treating that amount as net profit or deciding issues of expense deduction and apportionment.

Defendants accordingly request summary judgment on the composition claim or, alternatively, partial summary judgment on the independent grounds and remedies addressed below.

## II. RELEVANT FACTS

### A. The Composition, Registration, and Accused Release

This action concerns the "Blindside" musical composition, not its sound recording. ECF 49 (Rule 12 Order) at 6. The copyright registration certificate identifies Alice Merton and Tobias Felix Kuhn as authors and Paper Plane Publishing GmbH and BMG Rights Management as claimants. UMFs 16-17. Merton & Grauwinkel GmbH is not identified as an author or claimant. UMF 13.

The certificate states that the composition was first published on June 17, 2022,

and that its effective registration date was August 19, 2024. UMFs 38-39. "Gun To My Head" was included in the seventeen track "Vultures 2 Digital Deluxe Album 4," which was offered for sale through Yeezy.com on August 8-9, 2024. UMFs 40-41, 60.

**B. Distribution and Sales of the Relevant Edition**

Yeezy.com was the only authorized distribution channel for "Gun To My Head." UMF 29. Neither Ye nor Yeezy Record Label, LLC authorized distribution through third-party streaming or digital music platforms. UMFs 30-31.

The other deluxe editions reflected in the income detail report did not contain "Gun To My Head." UMF 61. The edition containing the song promoted the broader *Vultures 2* album, and no independent marketing activities were undertaken to promote "Gun To My Head." UMFs 62-63.

The income detail report produced as YRL000054 reflects TITOL's regularly maintained sales data through July 31, 2025. UMF 64. The report identifies 13,877 units sold, gross sales of $70,033.55, returns of $5.00, and sales revenue after returns of $70,028.55 for "Vultures 2 Digital Deluxe Album 4." UMFs 65-68. These figures concern the entire edition, which contained sixteen tracks in addition to "Gun To My Head." UMFs 60, 65-68.

The reported sales were the only sales of that edition. UMF 69. No additional sales or receipts attributable to the edition or song occurred after July 31, 2025 through October 16, 2026. UMF 70. Neither Defendant received revenue from the song beyond the revenue attributable to sales of that deluxe edition. UMFs 71-72.

**C. Discovery Concerning Ownership, Comparison Evidence, and Damages**

On August 18, 2026, Defendants served interrogatories and requests for production on each Plaintiff and received Plaintiffs' responses on September 17, 2026. UMFs 1-2. Fact discovery was scheduled to close on September 25, 2026, and initial expert disclosures were due October 2, 2026. UMFs 3-4. The Court subsequently





MARTORELL LAW APC
Litigation & Trial Counsel

reopened discovery only for Ye's deposition, leaving the remaining deadlines unchanged. UMF 5.

Defendants also noticed the corporate Plaintiffs' depositions concerning their claimed composition rights, chains of title, damages, profits, and licensing history. UMFs 8, 10. Neither corporate Plaintiff produced a representative for its noticed deposition, and Alice Merton did not appear for hers. UMFs 9, 11-12.

As of October 16, 2026, Plaintiffs had produced no documents in response to Defendants' August 18 requests and had served no substantive supplemental interrogatory answers. UMFs 6-7. Merton & Grauwinkel had not identified any conveyance, license, retained royalty interest, or other transaction establishing its claimed composition rights, nor had it produced an instrument establishing those rights. UMFs 14-15.

Plaintiffs' interrogatory responses did not identify the particular original expression allegedly copied from "Blindside," its quantitative or qualitative significance, or the versions of "Gun To My Head" on which they based their claims. UMFs 20-24. Plaintiffs produced none of the requested comparison recordings, registration deposit materials, compositional creation materials, scores, or completed musicological analyses. UMFs 25-26, 28. They also failed to identify any testifying expert or serve disclosures of proposed expert opinions concerning compositional similarity, protectability, or musical significance. UMF 27.

Plaintiffs likewise provided no substantive interrogatory answers identifying a factual basis for attributing the alleged YouTube publication to either Defendant or describing the particular infringing acts attributed to each Defendant. UMFs 32-37. Nor did they identify a new or separate course of alleged infringement commencing on or after August 19, 2024. UMFs 42-44.

Plaintiffs' initial disclosures contained no damages computation. UMF 45. As of October 16, 2026, none had provided an actual damages amount or calculation method in its interrogatory answers or supplemental disclosures. UMFs 46-48.

MARTORELL LAW APC
Litigation & Trial Counsel

Plaintiffs identified no comparable executed license in their interrogatory responses and produced no damages calculations, comparable license documents, records of lost licensing transactions, canceled performance agreements, or historical income records supporting their claimed losses. UMFs 49-51, 55-56.

BMG Rights Management (US) LLC separately reported, subject to its stated objections, that reasonable searches found no documents responsive to requests concerning executed "Blindside" licenses or licensing opportunities allegedly lost because of "Gun To My Head." UMFs 57-58. Plaintiffs also failed to provide substantive interrogatory answers identifying the factual connection between Defendants' revenues and the alleged use of the "Blindside" composition. UMFs 73-75.

## III. LEGAL STANDARD

### A. Summary Judgment Requires an Element-Specific Showing That No Genuine Dispute of Material Fact Requires Trial.

Summary judgment is required when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

When the plaintiff bears the burden of proof at trial, a defendant may satisfy its initial burden by identifying the absence of evidence on an essential element after adequate time for discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). The defendant need not produce evidence negating the claim. *Id.* at 322-25. It may point out that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The Ninth Circuit applies this absence of proof standard to defense motions for summary judgment. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531-

MARTORELL LAW APC
Litigation & Trial Counsel

532 (9th Cir. 2000).

Once the moving party makes that showing, the opposing party must identify specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). It cannot rely on the allegations in its pleadings. *Id.*

**B. Rule 56 Permits Partial Judgment and Requires Attention to Admissibility, Foundation, and the Precise Relief Supported by the Record.**

Rule 56 permits judgment on all or part of a claim or defense. Fed. R. Civ. P. 56(a). If the Court does not grant all requested relief, it may establish material facts that are not genuinely disputed, including an item of damages or other relief. Fed. R. Civ. P. 56(g). A party must support its factual position with particular record citations or show that the opposing party cannot produce admissible evidence supporting the fact. Fed. R. Civ. P. 56(c)(1). The material's content must be capable of presentation in an admissible form. Fed. R. Civ. P. 56(c)(2). A supporting declaration must rest on personal knowledge, state facts admissible in evidence, and establish the declarant's competence to testify. Fed. R. Civ. P. 56(c)(4).

**C. Copyright Infringement Requires Ownership and Copying of Original Constituent Elements.**

Copyright infringement requires ownership of a valid copyright and copying of protected aspects of the work. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). Section 501(b) permits the legal or beneficial owner of an exclusive right to sue for infringement committed during that ownership. 17 U.S.C. § 501(b). The claim here concerns the "Blindside" musical composition rather than its sound recording. ECF 49 at 6.

The copying inquiry has two distinct components: actual copying and unlawful appropriation. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). Unlawful appropriation requires substantial similarity of protected expression under both the extrinsic and intrinsic tests. *Id.* at

MARTORELL LAW APC
Litigation & Trial Counsel

1064-65. The extrinsic test objectively compares specific expressive elements. *Id.* at 1064-65. The intrinsic test considers similarity from the ordinary observer's perspective. *Id.* at 1064-65.

## IV. ARGUMENT

### A. Defendants Are Entitled to Summary Judgment Against Merton & Grauwinkel Because It Has Not Established Ownership of an Exclusive Right in the Composition.

Merton & Grauwinkel has identified no evidence that it legally or beneficially owned an exclusive right in the "Blindside" composition during the alleged infringement. UMFs 14-15. Defendants are therefore entitled to summary judgment on its infringement claim.

Section 501(b) permits suit by the legal or beneficial owner of an exclusive right for infringement committed during that ownership. 17 U.S.C. § 501(b). A nonexclusive licensing or administrative role alone does not establish ownership of an exclusive right. *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 983-89 (9th Cir. 2017) (affirming summary judgment where a licensing agent's agreements did not confer an enforceable exclusive interest).

The FAC identifies Merton & Grauwinkel as the company that released the "Blindside" sound recording. ECF 38 (First Amended Complaint), ¶ 45. The composition certificate names Paper Plane Publishing GmbH and BMG Rights Management as claimants, and Merton and Kuhn as authors. UMFs 16-17. It does not name Merton & Grauwinkel. UMF 13. A role in releasing the recording does not establish ownership of the composition rights at issue. *See Newton v. Diamond*, 388 F.3d 1189, 1191 (9th Cir. 2004) (recognizing that sound recordings and their underlying compositions are separate works with distinct copyrights).

Defendants asked Merton & Grauwinkel to identify its claimed composition rights, their limitations, the transfers in its chain of title, and the supporting instruments. UMF 18. Its responses identified none and deferred further answers to

MARTORELL LAW APC
Litigation & Trial Counsel

"the appropriate stage of discovery." UMFs 14, 18. The related production requests sought transfer, acquisition, intercompany, and rights documents. UMF 19. As of October 16, 2026, Merton & Grauwinkel had identified no particular conveyance, license, retained royalty interest, or other transaction establishing its composition rights. UMF 14. It had produced no instrument establishing those rights. UMF 15.

The FAC's collective allegation of exclusive ownership does not supply evidence of Merton & Grauwinkel's own rights. ECF 38 (First Amended Complaint), ¶ 67; UMFs 14-15. Since the record does not establish that essential element, the Court should enter summary judgment against Merton & Grauwinkel on the composition claim.

### B. Defendants Are Entitled to Summary Judgment Because Plaintiffs Cannot Establish Substantial Similarity of Protected Compositional Expression.

Plaintiffs have supplied no substantive comparison establishing the protected compositional expression allegedly copied. UMFs 20-26, 28. They have disclosed no expert analysis to fill that gap. UMF 27. Defendants therefore seek summary judgment on the composition claim.

#### 1. The Extrinsic Test Requires an Objective Comparison of Protected Compositional Expression Before the Claim May Proceed to Trial.

Actionable substantial similarity requires both the objective extrinsic test and the subjective intrinsic test. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). The extrinsic inquiry compares protected expression. *Id.* at 1069-70. Actual borrowing does not alone establish unlawful appropriation. *Id.* at 1069-70.

For the disputed musical comparison, the extrinsic test requires "analytical dissection of a work and expert testimony." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004), abrogated on other grounds by *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc).

MARTORELL LAW APC
Litigation & Trial Counsel

MARTORELL LAW APC
Litigation & Trial Counsel

The required showing cannot be deferred to the jury's overall impression. *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (affirming defense judgment where the objective comparison was insufficient). "[A] plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment." *Id.* at 1045. Here, Plaintiffs allege that a melody phrase extends through the accused song's bass line melody and that opening vocal material is dominant. ECF 38 (First Amended Complaint), ¶ 61. Those technical assertions identify a theory. They do not supply its objective proof.

**2. Plaintiffs Supplied No Disclosed Expert Analysis or Substantive Discovery Comparison Supporting the Alleged Protected Similarities.**

Each Plaintiff was asked to identify the original expression allegedly copied, explain its quantitative or qualitative significance to "Blindside," and identify the accused versions. UMFs 20-24. None supplied that comparison. *Id.* Plaintiffs also failed to produce the requested completed musicological analyses. UMF 28.

Nor did Plaintiffs produce their deposit material, compositional creation materials, comparison recordings, or scores, or supplement the responses with a substantive comparison. UMFs 7, 25-26. Competent evidence permitting comparison is necessary: "There can be no proof of 'substantial similarity' and thus of copyright infringement unless Seiler's works are juxtaposed with Lucas' and their contents compared." *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319 (9th Cir. 1986) (affirming summary judgment after exclusion left no admissible comparison evidence).

Defendants need not construct the missing comparison themselves. *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1105 (C.D. Cal. 2005) (rejecting the argument that defendants had to supply the accused films to satisfy their moving burden). "Defendants can prevail on summary judgment, however, merely by pointing out that there is an absence of evidence to support [Plaintiffs'] case." *Id.* at 1105. This consequence applies to musical comparisons. *See Johannsongs-Publ'g Ltd. v. Lovland*, No. CV 18-10009-AB (SSX), 2020 WL 2315805, at *5-7 (C.D. Cal. Apr. 3,

2020), aff'd, 2021 WL 5564626 (9th Cir. Nov. 29, 2021) (excluding unreliable comparative reports and granting defense summary judgment).

The deficiency is not merely the absence of a musicologist. Plaintiffs have not identified the protected expression allegedly copied, explained its comparative significance, or disclosed analysis supplying the objective comparison necessary to establish actionable similarity. UMFs 20-28.

#### 3. Plaintiffs Disclosed No Expert Analysis Supporting Their Compositional Theory.

Plaintiffs disclosed no expert under Rule 26(a)(2)(A), no report under Rule 26(a)(2)(B), and no subject matter and opinions disclosure under Rule 26(a)(2)(C). UMF 27. A songwriter's or party's status does not convert specialized compositional analysis into ordinary lay testimony. *See* Fed. R. Evid. 701(c). The Ninth Circuit has affirmed exclusion and resulting summary judgment for failure to satisfy the applicable non-retained-expert requirements. *Merch. v. Corizon Health, Inc.*, 993 F.3d 733, 739-42 (9th Cir. 2021).

The October 2, 2026 affirmative disclosure deadline passed without any such disclosure. UMFs 4, 27. Rule 37(c)(1) restricts use of undisclosed opinions unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). This omission has left no disclosed technical analysis to examine during discovery. UMFs 27-28. Plaintiffs have supplied no competent comparison establishing the protected compositional expression allegedly copied. UMFs 20-28. The Court should enter summary judgment on the composition claim.

### C. Defendants Are Entitled to Partial Summary Judgment on Liability Based on the Alleged Third-Party Publication.

Defendants seek partial summary judgment against liability and recovery based on the alleged third-party publication. Plaintiffs have supplied no substantive discovery answers identifying a factual basis for attributing that publication to either Defendant. UMFs 32-34.



MARTORELL LAW APC
Litigation & Trial Counsel

**1. Collective Allegations Do Not Establish Each Defendant's Responsibility for Each Act.**

Plaintiffs must establish an infringing act by the defendant sued or a basis for attributing another person's act to that defendant. 17 U.S.C. § 501(a). The FAC's collective allegation that Defendants produced, manufactured, distributed, and sold the recording does not establish each Defendant's responsibility for the alleged third-party publication. ECF 38 (First Amended Complaint), ¶¶ 68-70.

Defendants' interrogatories separately sought the acts attributed to Ye and YRL, including their dates, locations, and manner. UMFs 35-37. None of the three Plaintiffs provided a substantive account of either Defendant's alleged conduct. *Id.* No substantive supplemental answers followed. UMF 7.

**2. Unauthorized Third-Party Uploads Do Not Establish Contributory or Vicarious Liability Without the Required Additional Proof.**

Plaintiffs allege a YouTube publication without identifying an uploader or account controlled by either Defendant. ECF 38 (First Amended Complaint), ¶ 58. Their prayer in the FAC references contributory and vicarious liability, but those labels do not supply the factual connection. ECF 38 (First Amended Complaint), Prayer, ¶¶ 4(b)-(c), at 15.

This is critical because knowledge of another person's infringement does not alone establish contributory liability. *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583, 592-96 (2026) (rejecting service provider liability based on knowledge without the required intentional assistance). Vicarious liability separately requires the requisite financial benefit and right and ability to supervise the infringement. *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154-55 (9th Cir. 2012) (upholding liability supported by managerial control and financial benefit).

Defendants expressly asked for the facts attributing the alleged YouTube publication to each of them. UMFs 32-34. All three Plaintiffs deferred their answers. *Id.* They supplied no later substantive answers identifying authorization, intentional

MARTORELL LAW APC
Litigation & Trial Counsel

assistance, supervision, or financial benefit concerning that upload. UMF 7.

Yeezy.com was the only authorized distribution channel for "Gun To My Head." UMF 29. Neither Defendant authorized distribution through third-party streaming or digital music platforms. UMFs 30-31. Plaintiffs identified no facts in their discovery responses connecting either Defendant to the alleged YouTube publication through direct conduct, authorization, intentional assistance, supervisory control, or financial benefit. UMFs 32-37. The Court should therefore grant partial summary judgment on liability and recovery based on that alleged publication.

**D. Section 412 Bars Statutory Damages and Plaintiffs' Copyright Attorney's Fees.**

Section 412(2) bars statutory damages and attorney's fees for infringement commencing after publication but before registration unless registration occurs within three months after first publication. 17 U.S.C. § 412(2). The bar is mandatory. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699-700 (9th Cir. 2008) (reversing statutory damages where infringement preceded qualifying registration). "17 U.S.C. § 412(2) of the Copyright Act precludes an award of attorneys' fees if the copyrighted work is not registered prior to the commencement of the infringement, unless the registration is made within three months after the first publication of the work." *Id.* at 701-702.

The "Blindside" composition was first published on June 17, 2022. UMF 38. Its effective registration date was August 19, 2024. UMF 39. Plaintiffs allege an August 8, 2024 deluxe-edition release. ECF 38 (First Amended Complaint), ¶ 57. Yeezy's Mr. Karre confirms the August 8-9 Yeezy.com sales. UMF 41. The accused release therefore preceded registration, which occurred more than two years after first publication. UMFs 38-39, 41.

Later acts in the same series do not restart the commencement date. "[T]he first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412." *Derek Andrew, Inc. v.*

MARTORELL LAW APC
Litigation & Trial Counsel

*Poof Apparel Corp.*, 528 F.3d 696, 701 (9th Cir. 2008).

Plaintiffs were asked to identify any new or separate infringement commencing on or after August 19, 2024. UMFs 42-44. Their responses concerning Ye and YRL identified none. *Id.* No substantive supplementation supplied one. UMF 7. The allegation that the August 8 YouTube publication remains available does not identify a distinct course of postregistration infringement by either Defendant. ECF 38 (First Amended Complaint), ¶ 58. It does not avoid § 412's bar.

Plaintiffs' willfulness allegations do not override § 412's registration requirement. *See* 17 U.S.C. §§ 412, 504(c)(2).

The Court should enter partial judgment barring statutory damages, including willfulness enhancements, and barring 17 U.S.C. § 505 attorney's fees for the infringement at issue. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 701-02 (9th Cir. 2008).

**E. Defendants Are Entitled to Partial Summary Judgment on Plaintiffs' Unsupported Actual Damages Claims.**

Defendants seek partial summary judgment against Plaintiffs' unsupported actual damages theories. Plaintiffs have supplied neither a damages computation nor objective support for the claimed losses. UMFs 46-48, 55-56. Actual damages require a supported economic loss caused by the infringement. *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708-10 (9th Cir. 2004).

**1. None of the Plaintiffs Supplied the Requested Amount or Method for Its Actual Damages Claim.**

Rule 26 required a computation of each damages category and access to the supporting material, followed by supplementation of materially incomplete disclosures. Fed. R. Civ. P. 26(a)(1)(A)(iii), (e)(1)(A). Plaintiffs supplied neither an amount nor a method in response to the actual damages interrogatories. UMFs 46-48.

Plaintiffs produced no calculation file, comparable license document, identified lost license transaction, canceled performance agreement, historical income record, or

MARTORELL LAW APC
Litigation & Trial Counsel

other support for an actual damages computation. UMFs 55-56.

These omissions present an independent failure of proof, regardless of whether an exclusion sanction is imposed. UMFs 46-48, 55-56. Defendants need not provide a competing valuation to expose that deficiency. *Bell v. Taylor*, 827 F.3d 699, 709-10 (7th Cir. 2016) (affirming summary judgment where the owner's asserted licensing price lacked concrete support). Defendants therefore seek partial summary judgment on actual damages.

Rule 37(c)(1) bars use of information omitted from required disclosures unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Repeated reservations do not satisfy that duty. *See Deque Sys. Inc. v. Browserstack, Inc.*, 177 F.4th 585, 594-96, 600 n.11 (4th Cir. 2026) (affirming exclusion and summary judgment after deferred computations and late affirmative disclosures).

The resulting prejudice is concrete. UMF 59. Defendants could not examine the assumptions, evaluate proposed comparables, investigate lost transactions, or test the calculation with the responsible witnesses. *Id.* The noticed organizational examinations also did not occur. UMFs 9, 11.

The repeated deferrals and failure to disclose calculations or supporting transactions support a finding of culpable nondisclosure. UMFs 46-48, 55-56, 59. The Court should consider those facts and the lost examination opportunities in assessing fault and any proposed lesser measure. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246-48 (9th Cir. 2012).

### 2. Plaintiffs Have No Objective Evidence Supporting a Hypothetical License Fee.

A hypothetical license fee requires objective evidence of the value of the particular rights and use. *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087-93 (9th Cir. 2014) (rejecting an inadequately supported license valuation).

Each Plaintiff was asked to identify executed licenses considered comparable. UMFs 49-51. None identified any. *Id.* BMG Rights Management (US) LLC reported

MARTORELL LAW APC
Litigation & Trial Counsel

that a reasonable search found no responsive documents for the request seeking executed "Blindside" licenses from January 1, 2022 through compliance. UMF 57.

Finally, "Making the plaintiff whole is plainly different from punishing the infringer by charging the highest possible rate for the infringement." *Jarvis v. K2 Inc.*, 486 F.3d 526, 535 (9th Cir. 2007). Plaintiffs have identified no comparable executed license or other objective valuation supporting their claimed hypothetical license fee. UMFs 49-51, 55-57. Their hypothetical license theory therefore lacks the necessary evidentiary foundation.

### 3. Plaintiffs Have Not Established a Lost License, Performance, or Other Economic Opportunity Caused by the Alleged Infringement.

Merton & Grauwinkel and Paper Plane identified no proposed license that failed because of "Gun To My Head," despite direct interrogatories seeking that information. UMFs 52-53. Plaintiffs produced no supporting lost license or income records afterward. UMFs 55-56.

BMG Rights Management (US) LLC likewise reported that a reasonable search found no responsive documents for opportunities it contends were lost, abandoned, reduced, or impaired because of the song. UMF 58. A generalized assertion that infringement impaired future licensing opportunities does not establish actual damages. *Giron v. Line Fin. Health Network*, No. 24-CV-03096-EMC, 2026 WL 296652, at *5 (N.D. Cal. Feb. 4, 2026) (granting summary judgment against unsupported licensing loss damages).

Merton alleges that threats caused her to fear returning for United States tour dates and to stop performing "Blindside." ECF 38 (First Amended Complaint), ¶¶ 59-60, 64. Yet, she identified no engagement that she canceled, postponed, declined, or materially changed because of the alleged threats. UMF 54. Plaintiffs produced no agreement or calculation establishing a loss from any such engagement. UMFs 55-56. The record therefore identifies neither a particular lost transaction nor a resulting economic amount. UMFs 54-56. Defendants seek partial judgment against that

MARTORELL LAW APC
Litigation & Trial Counsel

MARTORELL LAW APC
Litigation & Trial Counsel

unsupported lost opportunity theory.

#### 4. Personal Distress and Subjective Objection to Association Are Not Copyright Market Damages.

The FAC describes humiliation, unwanted association, disagreement with Ye's values, and fear arising from third-party threats. ECF 38 (First Amended Complaint), ¶¶ 54-60, 64. Those reactions are not themselves a measure of copyright market injury. *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002) (rejecting the owner's subjective distress as a substitute for objective market-value evidence). "Consequently, [Plaintiff's] subjective view, which really boils down to 'hurt feelings' over the nature of the infringement, has no place in this calculus." *Id.*

Their evidence must establish a loss to an enforceable copyright interest and connect the amount sought to infringement. *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708-10 (9th Cir. 2004). Plaintiffs supplied no computation or supporting records making that connection. UMFs 46-48, 55-56. The Court should enter partial summary judgment barring personal distress and subjective offense as measures of damages on the composition claim.

### F. The Court Should Limit the Profits Inquiry to Supported Revenues Connected to the Alleged Infringement.

Defendants seek partial summary judgment excluding unrelated revenues from the profits inquiry and limiting the relevant direct-sales revenue base to the $70,028.55 shown by the deluxe album 4 record and Karre's testimony. UMFs 68-72. Section 504(b) separates actual damages from additional attributable profits. 17 U.S.C. § 504(b). Plaintiffs must identify connected gross revenue. *Id.* Defendants bear the burden on deductible expenses and profits attributable to other contributions. *Id.*

#### 1. Unrelated Album, Concert, Merchandise, and Platform Receipts Are Not Recoverable Without a Causal Connection to the Alleged Infringement.

Section 504(b) permits recovery of profits attributable to infringement. 17 U.S.C. § 504(b). Plaintiffs first must establish a nonspeculative connection between

the infringement and the additional revenues sought. *Mackie v. Rieser*, 296 F.3d 909, 914-16 (9th Cir. 2002) (affirming summary judgment against speculative indirect profits).

Defendants asked each Plaintiff to identify the facts connecting the alleged infringement to revenues attributed to Ye or YRL. UMFs 73-75. None supplied that causal explanation in its interrogatory responses. *Id.* No substantive supplementation or responsive production followed. UMFs 6-7.

The Deluxe Album 4 promoted the broader "Vultures 2" album. UMF 63. "Gun To My Head" had no independent marketing. UMF 62. Plaintiffs fail to establish that the composition generated revenue from other editions, concerts, merchandise, or platforms. *Thale v. Apple Inc.*, No. C-11-03778-YGR, 2013 WL 3245170, at *8 (N.D. Cal. June 26, 2013) (granting partial summary judgment despite the asserted promotional purpose of the copyrighted use).

Partial summary judgment may exclude unsupported revenue categories. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (affirming exclusion of specified revenues unsupported by nonspeculative attribution evidence). "[S]ummary judgment may properly be awarded to the infringer with respect to part or all of the contested revenues." *Id.* at 522. Defendants request that ruling for the additional revenue claims, leaving only the connected receipts established below as the relevant revenue base.

**2. The Relevant Direct-Sales Revenue is $70,028.55 from the Edition Containing the Song.**

The Digital Deluxe Album 4 is the edition containing the song and supplies the relevant direct sales revenue base. UMFs 40, 68-70. In illustrating infringement of a poem within an anthology, the Second Circuit explained that "the owner's burden would require evidence of the revenues realized from the sale of the anthology containing the infringing poem." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001).



MARTORELL LAW APC
Litigation & Trial Counsel

Here, "Gun To My Head" appeared in the seventeen track "Vultures 2 Digital Deluxe Album 4," sold on Yeezy.com on August 8-9, 2024. UMFs 40-41, 60. The other deluxe versions shown in Exhibit 1, including the redacted rows, did not contain the song. UMF 61.

The applicable income detail report from TITOL identifies 13,877 units sold of "Vultures 2 Digital Deluxe Album 4," gross sales of $70,033.55, returns of $5.00, and sales revenue after returns of $70,028.55 through July 31, 2025. UMFs 64-68. These figures concern the entire seventeen track edition, not revenue attributable solely to the one track at issue, "Gun To My Head." UMFs 60, 65-68. Yeezy's Head of Revenue, Joseph Karre, further confirms that there were no additional sales or receipts attributable to the edition or song through October 16, 2026. UMFs 69-72.

The Court should thus limit the direct sales revenue base for the profits inquiry to $70,028.55 after returns. It should exclude the unsupported unrelated revenues identified above.

### G. The Copyright Claim Does Not Permit Punitive Damages, Private Fines, Duplicate Recovery, or Unauthorized Litigation Expenses

Defendants also seek partial summary judgment barring punitive damages, private fines, duplicate recovery, and investigative or expert expenses outside the authorized statutory categories.

#### 1. The Copyright Claim Does Not Support Plaintiffs' Additional Punitive-Damages or Private-Fine Demands

The FAC demands at least $1 million in punitive damages and additional statutory fines. ECF 38 (First Amended Complaint), ¶¶ 72-73, Prayer, ¶ 5, at 15. However, punitive damages are not available under the Copyright Act. *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 939 (C.D. Cal. 2018) (granting partial summary judgment against punitive copyright damages). Sections 504 and 505 supply no additional private fine of the kind demanded here. 17 U.S.C. §§ 504-505. The prior refusal to strike allegations did not decide entitlement to these remedies.



MARTORELL LAW APC
Litigation & Trial Counsel

*See* ECF 49 at 4-5. The Court should enter partial judgment against the punitive damages and private fine demands.

**2. Catchall Labels Do Not Authorize Duplicate Recovery or Unrestricted Investigative Expenses**

The FAC separately demands profits, actual damages, and all monies received as unjust enrichment. ECF 38 (First Amended Complaint), Prayer, ¶¶ 4(b)-(d), at 15. Section 504(b) permits additional attributable profits only to the extent not already taken into account in actual damages. 17 U.S.C. § 504(b). The unjust enrichment label does not authorize a second recovery of the same economic amount. *Id.*

The demand for investigative fees under § 505 is also overbroad. ECF 38 (First Amended Complaint), Prayer, ¶ 6, at 15. Copyright "full costs" are limited to the categories authorized by the general federal costs statutes—they do not encompass every litigation expense. *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 339-41 (2019) (rejecting an expanded award of expert, consulting, and other litigation expenses). Defendants request partial judgment against duplicative recovery and investigative or expert expenses outside the authorized statutory categories.

## V. CONCLUSION

For these reasons, Defendants respectfully request that the Court grant summary judgment or, alternatively, partial summary judgment as set forth above.

Dated: October 16, 2026

**MARTORELL LAW APC**

By: */s/ Evan Miller*
Eduardo Martorell
Christopher Rosario
Evan Miller

*Attorneys for Defendants*
*Ye and Yeezy Record Label, LLC*

MARTORELL LAW APC
Litigation & Trial Counsel

MARTORELL LAW APC
Litigation & Trial Counsel

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Ye and Yeezy Record Label, LLC, certifies that this brief contains 5,750 words, which complies with the word limit of Local Rule 11-6.1.

Dated: October 16, 2026

**MARTORELL LAW APC**

By: *__/s/ Evan Miller__*
Eduardo Martorell
Christopher Rosario
Evan Miller

*Attorneys for Defendants*
*Ye and Yeezy Record Label, LLC*